CAROLYN H. OAKLEY, Plaintiff v. JON H. OAKLEY, Defendant

No. COA03-915

(Filed 17 August 2004)

### 1. Divorce— alimony—separation agreement—procedure for modifying or vacating alimony

Defendant husband erred by moving to terminate alimony under Rule 60(b)(6), because: (1) when the parties submitted their separation agreement to the court, it became a court order and was subject to the rules concerning such orders; and (2) N.C.G.S. § 50-16.9 outlines the procedure for modifying or vacating alimony awards.

### 2. Divorce— alimony—separation agreement—cohabitation

The trial court did not err by concluding that plaintiff wife did not cohabitate with a person of the opposite sex to whom she was unrelated by blood or marriage in violation of the parties' separation agreement, because defendant husband failed to present evidence of activities beyond plaintiff and her boyfriend's sexual relationship and their occasional trips and dates to show the assumption of marital rights, duties, and obligations which are usually manifested by married people.

**3. Contempt— civil—failure to pay alimony—ability to comply**

The trial court erred by finding defendant husband in contempt of court for willful failure to pay alimony to plaintiff wife in accordance with the parties' incorporated separation agreement, because there was no determination in the trial court's findings of defendant's present ability to comply with the terms of the order.

Appeal by defendant from order entered 21 October 2002 by Judge William L. Daisy in Guilford County District Court. Heard in the Court of Appeals 26 April 2004.

*Dawn Sheek for plaintiff-appellee.*

*Dotson, Kirkman & Morris, LLP, by Marshall F. Dotson, III, for defendant-appellant.*

THORNBURG, Judge.

This is an appeal from an order, issued after a bench trial, concluding that plaintiff had not lost her alimony rights due to cohabitation and finding defendant in contempt of a previous court order. Plaintiff and defendant were married on or about 25 February 1983 and separated on 30 December 1997. The parties are the parents of one child. A "Separation Agreement and Property Settlement Agreement" ("the agreement") was entered into by the parties on 20 March 1998. This agreement was incorporated into a divorce judgment granted to the parties on 27 October 1999. The agreement included many detailed provisions, including one related to alimony for plaintiff. Under the agreement, defendant was obligated to pay to plaintiff alimony "through June 30, 2005 or until . . . WIFE'S [plaintiff's] cohabitation with a person of the opposite sex to whom she is unrelated by blood or marriage, whichever event shall first occur."

Defendant paid alimony to plaintiff until April of 2000. At some point in May of 2000, defendant's attorney sent plaintiff a letter informing her that defendant would no longer pay her alimony due to her cohabitation with Richard Smith. On 7 November 2001, plaintiff filed a motion for contempt against defendant due to his failure to pay alimony and several other failures to comply with the separation agreement that are not at issue here. Defendant in turn made a motion under N.C. Gen. Stat. § 1A-1, Rule 60(b)(6) to vacate the court's order of alimony due to plaintiff's cohabitation. The trial court found that plaintiff was not cohabiting and found defendant in contempt of the court order for not paying alimony.

**OAKLEY v. OAKLEY**

[165 N.C. App. 859 (2004)]

**[1]** We first note that defendant erred in moving to terminate alimony under Rule 60(b)(6). "[W]henever the parties bring their separation agreements before the court for the court's approval, it will no longer be treated as a contract between the parties. All separation agreements approved by the court as judgments of the court will be treated similarly, to-wit, as court ordered judgments." *Walters v. Walters*, 307 N.C. 381, 386, 298 S.E.2d 338, 342 (1983). When the parties submitted their separation agreement to the court, it became a court order and subject to the rules concerning such orders. N.C. Gen. Stat. § 50-16.9 clearly outlines the procedure for modifying or vacating alimony awards. "Where one of two statutes might apply to the same situation, the statute which deals more directly and specifically with the situation controls over the statute of more general applicability." *Trustees of Rowan Tech. v. Hammond Assoc.*, 313 N.C. 230, 238, 328 S.E.2d 274, 279 (1985). Defendant should have moved to terminate the alimony award under N.C. Gen. Stat. § 50-16.9, not Rule 60(b)(1). However, the motion was assessed under the standards of N.C. Gen. Stat. § 50-16.9 by the trial court and we will review the matter as if defendant had in fact made the motion under that statute.

On appeal, defendant argues that the trial court erred in concluding that plaintiff did not cohabit with Smith and that the trial court erred in finding him in contempt of court for not paying alimony. "[W]hen the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Shear v. Stevens Building Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992).

**[2]** Defendant first argues that the trial court erred in concluding that plaintiff did not cohabit with Smith. The parties are not in disagreement as to the essential facts presented before the trial court. Rather, defendant is arguing that the trial court erred as a matter law in its application of N.C. Gen. Stat. § 50-16.9(b). Defendant asserts that the facts presented met the definition of cohabitation as provided in the statute. N.C. Gen. Stat. § 50-16.9(b) defines cohabitation:

> As used in this subsection, cohabitation means the act of two adults dwelling together continuously and habitually in a private heterosexual relationship, even if this relationship is not solemnized by marriage, or a private homosexual relationship. Cohabitation is evidenced by the voluntary mutual assumption of those marital rights, duties, and obligations which are usually manifested by married people, and which include, but are not

necessarily dependent on, sexual relations. Nothing in this section shall be construed to make lawful conduct which is made unlawful by other statutes.

N.C. Gen. Stat. § 50-16.9(b) (2003).

The evidence presented in this case, through the testimony of the parties, their son and the plaintiff's neighbor, primarily addressed plaintiff and Smith's intimate relationship and the number of nights that Smith spent at plaintiff's home. The trial court also received some testimony as to plaintiff and Smith taking overnight trips, having dinners together and watching television together. We also note that there was evidence that plaintiff and Smith were engaged to be married at the time of the hearing, though there was no evidence presented that plaintiff and Smith were engaged at the time that defendant ceased paying alimony.

This Court recently emphasized that "[i]n order for the trial court to conclude that cohabitation has occurred, it should make findings that the type of acts included in the statute [N.C. Gen. Stat. § 50-16.9(b)] were present." *Long v. Long*, 160 N.C. App. 664, 667, 588 S.E.2d 1, 3 (2003). Thus, in order for a trial court to conclude that one party has engaged in cohabitation, there must be evidence that the party engaged in the "voluntary mutual assumption of those marital rights, duties, and obligations which are usually manifested by married people, and which include but are not necessarily dependent on, sexual relations." N.C. Gen. Stat. § 50-16.9(b).

The holding in *Long* is in line with how our courts have dealt with issues of cohabitation in another context, the resumption of marital relations. Under N.C. Gen. Stat. § 52-10.1, married couples may execute separation agreements, however the executory terms of a separation agreement are terminated upon the "resumption of the marital relation." *In re Estate of Adamee*, 291 N.C. 386, 391, 230 S.E.2d 541, 545 (1976). N.C. Gen. Stat. § 52-10.2 defines the resumption of marital relations as the "voluntary renewal of the husband and wife relationship, as shown by the totality of the circumstances. Isolated incidents of sexual intercourse between the parties shall not constitute resumption of martial relations." N.C. Gen. Stat. § 52-10.2 (2003). The cases that apply this statute address whether married couples have reconciled and resumed cohabitation by looking at the particular circumstances that evidence a husband and wife relationship. We find these cases instructive in determining what constitutes marital rights, duties and obligations under N.C. Gen. Stat. § 50-16.9.

Our courts use one of two methods to determine whether the parties have resumed their marital relationship, depending on whether the parties present conflicting evidence about the relationship. *See Schultz v. Schultz,* 107 N.C. App. 366, 420 S.E.2d 186 (1992), *disc. review denied,* 333 N.C. 347, 426 S.E.2d 710 (1993). In the first test, developed from *Adamee,* where there is objective evidence, that is not conflicting, that the parties have held themselves out as man and wife, the court does not consider the subjective intent of the parties. *Schultz,* 107 N.C. App. at 373, 420 S.E.2d at 190. The other test grew out of the opinion in *Hand v. Hand,* 46 N.C. App. 82, 264 S.E.2d 597, *disc. rev. denied,* 300 N.C. 556, 270 S.E.2d 107 (1980), and addresses cases where the objective evidence of cohabitation is conflicting and thus allows for an evaluation of the parties' subjective intent. *Schultz,* 107 N.C. App. at 371, 420 S.E.2d at 189.

The only conflict in the objective evidence presented in the instant case was the number of nights per week that Smith spent the night at plaintiff's home. We find the objective test announced in *Adamee* and applied in *Schultz* instructive in this instance. The court in *Adamee,* quoting *Young v. Young,* 225 N.C. 340, 34 S.E.2d 154 (1945), said that "cohabitation means living together as man and wife, though not necessarily implying sexual relations. Cohabitation includes other marital responsibilities and duties." *Adamee,* 291 N.C. at 392, 230 S.E.2d at 546. This Court in *Schultz* applied the *Adamee* test and found cohabitation based on evidence such as the fact that the former husband kept an automobile at the common residence, lived in the residence continuously, moved his belongings to the residence, paid the utility bills and mowed the lawn. *Schultz,* 107 N.C. App. at 373, 420 S.E.2d at 190. The Court also considered that the former wife did the laundry, worked in the yard with the former husband and engaged in sexual relations with him. *Id.*

As defendant in the instant case presented no evidence of activities beyond plaintiff's and Smith's sexual relationship and their occasional trips and dates, we see no assumption of any "marital rights, duties, and obligations which are usually manifested by married people," such as those outlined in *Schultz.* Thus, the trial court did not err in concluding that plaintiff had not cohabited. Accordingly, the trial court did not err in denying defendant's motion to terminate alimony.

[3] Defendant also argues that the trial court erred in finding him in contempt of the court order for not paying alimony. As we noted

above, separation agreements approved by the court and incorporated into a judgment are treated as court orders and are "enforceable by the contempt powers of the court." *Walters*, 307 N.C. at 386, 298 S.E.2d at 342. N.C. Gen. Stat. § 5A-21 states in part:

> Failure to comply with an order of a court is a continuing civil contempt as long as:
>
> (1) The order remains in force;
>
> (2) The purpose of the order may still be served by compliance with the order;
>
> (2a) The noncompliance by the person to whom the order is directed is willful; and
>
> (3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.

N.C. Gen. Stat. § 5A-21(a) (2003). "This Court's review of a trial court's finding of contempt is limited to a consideration of 'whether the findings of fact by the trial judge are supported by competent evidence and whether those factual findings are sufficient to support the judgment.'" *General Motors Acceptance Corp. v. Wright*, 154 N.C. App. 672, 677, 573 S.E.2d 226, 229 (2002) (quoting *McMiller v. McMiller*, 77 N.C. App. 808, 810, 336 S.E.2d 134, 136 (1985)).

"A defendant in a civil contempt action will be fined or incarcerated only after a determination is made that the defendant is capable of complying with the order of the court." *Reece v. Reece*, 58 N.C. App. 404, 406-07, 293 S.E.2d 662, 663-64 (1982). Thus, a trial court must first make a finding of a defendant's present ability to comply with an order before concluding that a defendant is in civil contempt of an order. In the instant case, the trial court's only finding of fact regarding defendant's contempt was:

> The Defendant's willful failure to comply with the court's previous order is willful and without legal justification and therefore Defendant is in contempt of this court.

As there was no determination in the trial court's findings of the defendant's present ability to comply with the terms of the order in question, we reverse and remand to the trial court for further findings of fact consistent with this opinion.

Affirmed in part, reversed and remanded in part.

Chief Judge MARTIN and Judge HUNTER concur.