SHERRY CRENSHAW SMALLWOOD, Plaintiff
v.
JAMES STEVEN SMALLWOOD, Defendant

No. COA12-1229

Filed 21 May 2013

1. **Divorce—alimony—cohabitation—conclusion**

     Although the trial court in an alimony claim did not include a conclusion of law specifically stating that plaintiff was not engaged in cohabitation, the order contained a finding that plaintiff and her boyfriend did not voluntarily assume the marital rights, duties and obligations that are usually manifested by married people. The presence of competent evidence in the record supporting the trial court's determination of non-cohabitation compelled the affirmation of its decision.

2. **Divorce—alimony—cohabitation—findings**

     Challenged findings concerning cohabitation in an alimony action were supported by the evidence except for a finding concerning where plaintiff's boyfriend did his laundry. However, defendant did not demonstrate how he has been prejudiced by that erroneous finding. The Court of Appeals declined defendant's invitation to categorically hold that the mere presence of certain isolated factors automatically mandated a finding of cohabitation.

3. **Divorce—alimony—cohabitation—findings—subjective intent**

     There was no error in an alimony claim involving cohabitation where the trial court did not make findings on subjective intent. It was clear that the trial court was able to rule on the cohabitation issue based on the objective facts introduced into evidence by the

parties and plaintiff nowhere contended that the objective evidence was conflicting.

**4. Appeal and Error—preservation of issues—argument not raised at trial—grounds for exclusion of evidence**

Defendant in an alimony and cohabitation claim did not raise at trial the grounds on which he argued that the trial court erred by excluding the testimony of his detective. It is well-established that a contention not raised and argued in the trial court may not be raised and argued for the first time in the appellate court.

**5. Appeal and Error—argument—reference to prior contention**

The trial court did not err by denying defendant's motion to amend an alimony order where his argument amounted to a one-sentence reference to his previous contention that the trial court erred in determining that plaintiff did not engage in cohabitation. Defendant did not present any additional argument regarding his motion to amend.

**6. Divorce—alimony—date of separation to filing of claim**

The trial court is authorized by longstanding precedent and N.C.G.S. § 50-16.3A to award alimony for the period between the parties' date of separation and the filing of the claim for alimony in appropriate circumstances.

**7. Divorce—alimony order—correction of order—additional order issued—findings sufficient for both**

The trial court's order contained sufficient findings to support its award of retroactive alimony where the original order, through an apparent oversight, omitted a period of time. Rather than amending the order, the trial court entered another order awarding the retroactive alimony and the two orders, read together, were sufficient to support the entirety of the award.

Appeal by defendant from orders entered 8 February 2012 and 30 April 2012 by Judge Kathryn Whitaker Overby in Alamance County District Court. Heard in the Court of Appeals 12 February 2013.

*Walker & Bullard, P.A., by Daniel S. Bullard, for plaintiff-appellee.*

*Wishart, Norris, Henninger & Pittman, PA, by J. Wade Harrison, Hillary D. Whitaker, and Pamela S. Duffy, for defendant-appellant.*

DAVIS, Judge.

## SMALLWOOD v. SMALLWOOD

[227 N.C. App. 319 (2013)]

James Steven Smallwood ("defendant") appeals from orders awarding Sherry Crenshaw Smallwood ("plaintiff") alimony and retroactive alimony. After careful review, we affirm both orders.

### Factual Background

Plaintiff and defendant were married on 6 December 1991. During their marriage, the couple had one child. The parties separated on 3 April 2009, and plaintiff filed a complaint on 17 November 2009 for child custody and support, postseparation support, alimony, equitable distribution, divorce, and attorney's fees. Defendant filed an answer, counterclaiming for child custody, child support, equitable distribution, and divorce.

The trial court entered a consent order on 16 February 2010 in which it ordered defendant to pay postseparation support and child support. The trial court subsequently approved the parties' parenting agreement, resolving outstanding issues regarding child custody. In a separate action, the parties were divorced by judgment entered 9 September 2010. The court issued an equitable distribution order on 16 December 2011.

The trial court conducted an evidentiary hearing on the alimony claim on 29 November 2011. During the proceedings, defendant moved to amend his answer to add the defense of cohabitation, and the motion was allowed. In an order entered 8 February 2012, the trial court concluded that plaintiff and the man she was dating, Ronald Robinson ("Robinson"), were not cohabitating and that plaintiff was entitled to alimony in the amount of $4,000 per month.

Plaintiff subsequently moved to have the trial court hear her claims for retroactive alimony, retroactive child support, prospective child support, and attorney's fees. Defendant also filed a motion requesting that the court amend its alimony order to include additional findings. After holding a hearing on the parties' motions, the trial court entered an order on 30 April 2012 in which it ordered defendant to pay retroactive alimony and child support. The court denied defendant's motion to amend and ruled that the parties were responsible for their own attorney's fees. Defendant timely appealed to this Court from the trial court's 8 February 2012 and 30 April 2012 orders.

### Analysis

## I.  8 February 2012 Order

### A.  Challenge to Finding of Non-Cohabitation

[1] Defendant's primary argument on appeal is that the trial court erred in determining that plaintiff and Robinson were not cohabitating

"[W]hen the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Oakley v. Oakley*, 165 N.C. App. 859, 861, 599 S.E.2d 925, 927 (2004) (citation and quotation marks omitted). Evidentiary issues concerning credibility, contradictions, and discrepancies are for the trial court – as the fact-finder – to resolve and, therefore, the trial court's findings of fact are conclusive on appeal if there is competent evidence to support them despite the existence of evidence that might support a contrary finding. *Hand v. Hand*, 46 N.C. App. 82, 87, 264 S.E.2d 597, 599-600, *disc. review denied*, 300 N.C. 556, 270 S.E.2d 107 (1980). The trial court's conclusions of law, however, are reviewed *de novo* on appeal. *Casella v. Alden*, 200 N.C. App. 24, 28, 682 S.E.2d 455, 459 (2009).

Section 50–16.9(b) of the General Statutes provides in pertinent part that "[i]f a dependent spouse who is receiving postseparation support or alimony from a supporting spouse under a judgment or order of a court of this State remarries or engages in cohabitation, the postseparation support or alimony shall terminate." N.C. Gen. Stat. § 50–16.9(b) (2011). The statute defines "cohabitation" as

> the act of two adults dwelling together continuously and habitually in a private heterosexual relationship, even if this relationship is not solemnized by marriage, or a private homosexual relationship. Cohabitation is evidenced by the voluntary mutual assumption of those marital rights, duties, and obligations which are usually manifested by married people, and which include, but are not necessarily dependent on, sexual relations. . . .

N.C. Gen. Stat. § 50-16.9(b).

This Court has stated the following with regard to the legislative policy underlying § 50-16.9(b):

> "The statute reflects several of the goals of the 'live-in lover statutes,' terminating alimony in relationships that probably have an economic impact, preventing a recipient from avoiding in bad faith the termination that would occur at remarriage, but not the goal of imposing some kind of sexual fidelity on the recipient as the condition of continued alimony. The first sentence reflects the goal of terminating alimony in a relationship that probably has an economic impact. 'Continuous and habitual' connotes a relationship of some duration and suggests that the relationship must

be exclusive and monogamous as well. All of these factors increase the likelihood that the relationship has an economic impact on the recipient spouse."

*Craddock v. Craddock*, 188 N.C. App. 806, 810, 656 S.E.2d 716, 719 (2008) (quoting 2 Suzanne Reynolds, *Lee's North Carolina Family Law* § 9.85, at 493-94 (5th ed. 1999)) [hereinafter *Lee's Family Law*].

Professor Reynolds goes on to explain:

> The second sentence also tries to terminate postseparation support and alimony when the relationship has an economic effect and when someone is acting in bad faith to avoid termination. The more "rights, duties, and obligations" that characterize the relationship, the more likely it is that the relationship has economic repercussions. At least for the heterosexual relationship, the more indicia of "marital rights, duties, and obligations," the more chance that the decision not to marry is motivated only by a desire to continue receiving alimony.

*Lee's Family Law* § 9.85, at 494.

Our Supreme Court has held that, in light of the wording of § 50-16.9(b), in order to "find cohabitation, there must be evidence of: (1) a 'dwelling together continuously and habitually' of two adults and (2) a 'voluntary mutual assumption of those marital rights, duties, and 'obligations which are usually manifested by married people.' " *Bird v. Bird*, 363 N.C. 774, 779-80, 688 S.E.2d 420, 423 (2010) (quoting N.C. Gen. Stat. § 50-16.9(b)).

Here, the trial court made the following findings on the issue of cohabitation:

> 15. The plaintiff is dating Ronald Robinson. The plaintiff started dating Mr. Robinson after the date of separation. The plaintiff and Mr. Robinson started a sexual relationship in February 2011. Mr. Robinson has his own residence at 100 Rosemont Street, which is within walking distance to the plaintiff's residence.

> 16. Mr. Robinson spends the night with the plaintiff five to seven times each week. He does not keep clothes at the plaintiff's residence. Mr. Robinson does not keep a toothbrush at the plaintiff's residence. Mr. Robinson does not keep medicine at the plaintiff's residence.

17. The plaintiff has given Mr. Robinson, her mother and her friend Karen keys to her residence. The Plaintiff has let Mr. Robinson use her garage door opener on occasion, but not on a regular basis and Mr. Robinson does not keep the garage door opener.

18. Mr. Robinson does not pay any expenses for the plaintiff's residence. Mr. Robinson and the plaintiff do not exchange gifts with each other. Mr. Robinson and the plaintiff are not engaged to be married.

19. Mr. Robinson does not shower or bathe at the plaintiff's residence.

20. Mr. Robinson has helped the plaintiff fix meals at her residence. Mr. Robinson eats meals at the plaintiff's residence. Mr. Robinson often brings his own food to the plaintiff's residence; he has to have gluten free groceries. He has helped the plaintiff with the dishes and cleaning the kitchen after meals that he participated in.

21. Mr. Robinson and the plaintiff go out to eat several times a week. Sometimes Mr. Robinson will pay for the meal.

22. Mr. Robinson has fed the plaintiff's dogs and let the dogs out into the back yard. Mr. Robinson has helped the plaintiff fix her broken fence in the back yard one time. Mr. Robinson has mowed the grass at the plaintiff's residence, if the plaintiff does not have time to mow. Mr. Robinson has brought in the mail for the plaintiff a few times. Mr. Robinson has taken out the plaintiff's trash and recycling a few times.

23. Mr. Robinson does not do his or the plaintiff's laundry at the plaintiff's residence.

24. Mr. Robinson does not vacuum at the plaintiff's residence. The plaintiff vacuums her residence.

25. Mr. Robinson does visit the plaintiff at her place of employment.

26. Mr. Robinson and the plaintiff do attend church together.

27. Mr. Robinson and the plaintiff have been on one over night [sic] trip together, for the minor child's participation in a skate boarding [sic] event in the North Carolina Mountains, which was with a larger group that was also participating in the skate boarding [sic] event.

28. Mr. Robinson and the plaintiff do not refer to each other as husband and wife. Mr. Robinson and the plaintiff do kiss each other goodbye when they leave each other.

In its order, the trial court did not include a conclusion of law specifically stating that, based on its findings, plaintiff was not engaged in cohabitation. The order does, however, contain a finding that "[p]laintiff and Mr. Robinson have not both voluntarily assumed marital rights, duties and obligations that are usually manifested by married people." Although denominated as a finding of fact, this determination is more appropriately considered a conclusion of law as it provides the legal basis for the denial of defendant's defense to plaintiff's claim for alimony. *See Long v. Long,* 160 N.C. App. 664, 667, 588 S.E.2d 1, 3 (2003) (treating determination regarding cohabitation as conclusion of law).

On the issue of whether plaintiff and Robinson voluntarily assumed those marital rights, duties, and obligations that are usually manifested by married people, *Bird,* 363 N.C. at 779-80, 688 S.E.2d at 423, the trial court was required to consider the totality of the circumstances. *Oakley,* 165 N.C. App. at 862, 599 S.E.2d at 928. Under the "totality of the circumstances" test, a court must evaluate all the circumstances of the particular case, with no single factor controlling. *Fletcher v. Fletcher,* 123 N.C. App. 744, 750, 474 S.E.2d 802, 806 (1996), *disc. review denied,* 345 N.C. 640, 483 S.E.2d 706 (1997).

In this case, the trial court found, on the one hand, that: (1) plaintiff and Robinson have been in a sexual relationship since February 2011, and Robinson spends the night at her house five to seven nights a week; (2) Robinson has a key to plaintiff's house and has occasionally used her garage door opener; (3) Robinson has helped plaintiff prepare meals, eaten at her house, and helped clean up after the meals in which he "participated"; (4) Robinson and plaintiff go out to eat several times a week, and Robinson sometimes pays for the meal; (5) Robinson has helped take care of plaintiff's dogs; (6) Robinson, on one occasion, helped fix the fence in plaintiff's backyard; (7) Robinson has mowed plaintiff's lawn on occasions when she has not had the time to do so; (8) Robinson has collected plaintiff's mail and taken out the trash and recycling on occasion; (9) Robinson occasionally visits plaintiff at her place of work; (10)

Robinson and plaintiff attend church together; (11) Robinson, plaintiff, and her son went on one trip together; and (12) Robinson and plaintiff kiss each other goodbye when they leave each other's company.

On the other hand, the court found that: (1) Robinson maintains his own residence; (2) Robinson does not keep clothes, a toothbrush, or medicine at plaintiff's residence; (3) although Robinson has a key to plaintiff's house, she has also given keys to her mother and a female friend; (4) although plaintiff allows Robinson to use her garage door opener on occasion, he does not keep one and does not use one on a regular basis; (5) Robinson does not pay any expenses for plaintiff's residence; (6) plaintiff and Robinson do not exchange gifts with each other; (7) Robinson does not shower or bathe at plaintiff's residence; (8) he often brings his own food to plaintiff's house due to dietary restrictions; (9) plaintiff does her own laundry; (10) plaintiff, not Robinson, vacuums her house; (11) although Robinson went with plaintiff and her son on a trip, it was with a "larger group" participating in a sporting event; and (12) Robinson and plaintiff are not engaged to be married and do not refer to each other as husband and wife.

We conclude that these findings are sufficient to support the trial court's conclusion that plaintiff and Robinson have not voluntarily assumed those rights, duties, and obligations which are usually manifested by married people. While the court did determine that plaintiff and Robinson have engaged in some domestic activities, it did not find an assumption of marital rights and duties extending beyond those found in an intimate friendship – such as, for example, joint financial obligations, sharing of a home, combining of finances, pooling of resources, or consistent merging of families. *See Oakley,* 165 N.C. App. at 863, 599 S.E.2d at 928 ("As defendant in the instant case presented no evidence of activities beyond plaintiff's and Smith's sexual relationship and their occasional trips and dates, we see no assumption of any marital rights, duties, and obligations which are usually manifested by married people . . . ." (citation and quotation marks omitted)).

Defendant nonetheless contends that those isolated facts found by the trial court militating in favor of cohabitation should, *as a matter of law,* compel a conclusion of cohabitation, relying primarily on this Court's decision in *Rehm v. Rehm,* 104 N.C. App. 490, 409 S.E.2d 723 (1991).[1] In *Rehm,* this Court upheld the trial court's conclusion of

---

1. Defendant also cites to several cases from other jurisdictions in support of his position. Such cases, while potentially instructive, "are not binding on the courts of this State." *Morton Bldgs., Inc. v. Tolson,* 172 N.C. App. 119, 127, 615 S.E.2d 906, 912 (2005).

cohabitation based on findings that (1) the wife and the man she was dating maintained an "exclusive, monogamous relationship for both sexual and regular domestic purposes"; (2) while the man maintained a separate residence, he spent the night at the wife's house as many as five nights a week; (3) the man was seen leaving the wife's home dressed in clothes different from those he had been wearing the previous day; (4) the couple was seen kissing each other goodbye; and (5) the couple had taken overnight trips together, which often included the wife's child. *Id.* at 492-93, 409 S.E.2d at 724.

However, defendant's argument fails to take into account the standard of review employed by this Court in reviewing orders entered by trial courts in non-jury proceedings. We do not engage in a *de novo* review of the evidence and substitute our judgment for that of the trial court. *See Coble v. Coble*, 300 N.C. 708, 712-13, 268 S.E.2d 185, 189 (1980) ("[I]t is not for an appellate court to determine *de novo* the weight and credibility to be given to evidence disclosed by the record on appeal."). Instead, our review is "strictly limited" to determining whether the record contains competent evidence to support the trial court's findings of fact and whether those findings, in turn, support the trial court's conclusions of law. *Holloway v. Holloway*, __ N.C. App. __, __, 726 S.E.2d 198, 204 (2012).

Contrary to defendant's suggestion, *Rehm* does not stand for the proposition that the presence of those specific facts found by the trial court in that case will necessarily mandate a finding of cohabitation. Instead, our ruling was based on the fact that competent evidence existed in the record to support the trial court's findings, and ultimate determination, on the cohabitation issue in that case. This Court has emphasized that "isolated factors" do not control the determination of whether a former spouse and another person have assumed the marital rights, duties, and obligations which are usually manifested by married people. *See Fletcher*, 123 N.C. App. at 750, 474 S.E.2d at 806. Just as the existence of competent evidence in the record supporting the trial court's finding of cohabitation in Rehm dictated that we affirm its ruling in that case, so too the presence of competent evidence in the record supporting the trial court's determination of non-cohabitation in the present case likewise compels us to affirm its decision.

Defendant's argument invites this Court to categorically hold that the mere presence of certain, isolated factors – such as those found to exist in *Rehm* – automatically mandates a finding of cohabitation. We decline the invitation to do so as such a ruling would conflict with the dual tenets that (1) courts must consider the totality of the circumstances in

determining whether there has been an assumption of the marital rights, duties, and obligations that are usually manifested by married people; and (2) a trial court's ultimate conclusion on the issue of cohabitation must be affirmed on appeal when supported by competent evidence and adequate findings.

Here, we cannot conclude that there was no competent evidence to support the trial court's findings of fact regarding cohabitation or that those factual determinations were insufficient to support the trial court's ultimate legal conclusion that plaintiff was not cohabitating with Robinson. Consequently, defendant's argument is overruled.

### B. Challenge to Specific Findings of Fact

[2] Defendant also argues that several specific findings of fact by the trial court, weighing in favor of non-cohabitation, are not supported by the evidence in the record. In particular, defendant challenges the sufficiency of the evidence with respect to the trial court's findings that (1) Robinson maintains his "own residence"; (2) he does not keep clothes or medicine at plaintiff's residence; (3) he does not do his laundry at plaintiff's residence; and (4) he has collected plaintiff's mail "a few times."

Having carefully reviewed the extensive record in this case, we conclude that these findings are, in fact, supported by competent evidence with the exception of the finding that Robinson does not do his laundry at plaintiff's house. Although plaintiff testified at trial that she did her own laundry, there is no indication in the record as to who does Robinson's laundry or where it is done.

Defendant, however, has failed to demonstrate how he has been prejudiced by this erroneous finding. As this Court has stated, "the appellant has the burden not only to show error, but also to show that the alleged error was prejudicial and amounted to the denial of some substantial right." *Brown v. Boney*, 41 N.C. App. 636, 647, 255 S.E.2d 784, 790, *disc. review denied*, 298 N.C. 294, 259 S.E.2d 910 (1979); *accord Crenshaw v. Williams*, 211 N.C. App. 136, 144, 710 S.E.2d 227, 233 (2011) (declining to overturn custody order where appellant "fail[ed] to provide any explanation" as to how allegedly erroneous findings were material or prejudicial).

Despite the lack of evidentiary support for this particular finding, we believe that the trial court's remaining findings – set out above – were based on competent evidence and supported the trial court's conclusion of non-cohabitation. *See In re Estate of Mullins*, 182 N.C. App. 667, 670-71, 643 S.E.2d 599, 601 ("In a non-jury trial, where there are sufficient

findings of fact based on competent evidence to support the trial court's conclusions of law, the judgment will not be disturbed because of other erroneous findings which do not affect the conclusions." (citation and quotation marks omitted)), *disc. review denied,* 361 N.C. 693, 652 S.E.2d 262 (2007).

### C.  Subjective Intent Regarding Cohabitation

[3]  Defendant next argues that the trial court should have made additional findings on the issue of cohabitation addressing plaintiff's and Robinson's subjective intent. Defendant's argument on this issue refers to this Court's discussion in *Oakley* where we found the standards used in determining whether separated spouses have reconciled "instructive in determining what constitutes marital rights, duties and obligations under N.C. Gen. Stat. § 50-16.9." *Oakley,* 165 N.C. App. at 862, 599 S.E.2d at 928.

The *Oakley* Court summarized the law as follows:

> Our courts use one of two methods to determine whether the parties have resumed their marital relationship, depending on whether the parties present conflicting evidence about the relationship. In the first test, . . . where there is objective evidence, that is not conflicting, that the parties have held themselves out as man and wife, the court does not consider the subjective intent of the parties. The other test . . . addresses cases where the objective evidence of cohabitation is conflicting and thus allows for an evaluation of the parties' subjective intent.

*Id.* at 863, 599 S.E.2d at 928 (internal citations omitted).

Defendant contends that the trial court erred by failing to make any findings regarding plaintiff's and Robinson's subjective intent under the methodology articulated in *Oakley.* Defendant, however, misinterprets *Oakley.* As we explained in the reconciliation context, these are *alternative* methods of proof. *See Schultz v. Schultz,* 107 N.C. App. 366, 369, 420 S.E.2d 186, 188 (1992) ("[T]hese two lines of cases establish two alternative methods by which a trial court may find that separated spouses have reconciled."), *disc. review denied,* 333 N.C. 347, 426 S.E.2d 710 (1993)). Here, it is clear that the trial court was able to rule on the cohabitation issue based on the objective facts introduced into evidence by the parties without the need to consider plaintiff's and Robinson's subjective intent regarding the nature of their relationship.

Notably, neither in his brief nor at oral argument before this Court did defendant contend that the objective evidence in this case was

conflicting. To the contrary, defendant repeatedly asserts in his brief that the objective evidence is "overwhelming" and "not conflicting." Moreover, a review of the trial transcript fails to reveal a single instance where defendant argued to the trial court that the evidence was conflicting.

Similarly, at the hearing on defendant's motion to amend the alimony order, defendant made no argument that the evidence was in conflict or that the trial court should amend its order to include findings on the issue of subjective intent. Tellingly, the exhibit of proposed additional findings offered by defendant in support of his motion to amend does not include a single finding concerning subjective intent.

Defendant cannot claim that he was prejudiced by the trial court's failure to make findings on the issue of subjective intent when the record fails to show that he ever requested that the court do so. *See Griffin v. Griffin,* 237 N.C. 404, 410, 75 S.E.2d 133, 137 (1953) ("It is too late for the plaintiff on appeal to complain of failure of the court to find specific facts, when no specific request therefor was made at the hearing.").

Finally, it is well established that when the facts found by the trial court are "sufficient to determine the entire controversy," the court's "failure to find other facts is not error." *Graybar Elec. Co. v. Shook,* 283 N.C. 213, 217, 195 S.E.2d 514, 516 (1973). Because the trial court's findings addressing the "objective evidence" are sufficient to support its conclusion that cohabitation did not occur, it did not err by failing to make findings regarding subjective intent.

## D. Exclusion of Testimony of Private Investigator

[4] Defendant also argues that the trial court erred in excluding the testimony of his private investigator, Sandy Russell. At trial, Robinson was asked on cross-examination whether he remembered having a conversation outside of plaintiff's residence with Russell, who was posing as a woman looking for her lost dog. Robinson testified that he remembered having such a conversation but, when asked, denied having told Russell that he lived at plaintiff's house with his "wife" and "son."

When defendant subsequently called Russell to testify about the conversation, plaintiff objected, arguing that Russell's testimony was hearsay and was admissible only to the extent it corroborated Robinson's testimony. The trial·court ruled that Russell could testify to the extent her testimony "corroborate[d] Mr. Robinson's testimony," but stated that any non-corroborative testimony would not be considered. Russell then testified that during her conversation with Robinson, he told her that he lived in plaintiff's home and that he lived there with his wife and son.

On appeal, defendant argues that Russell's testimony was admissible both as (1) substantive evidence of Robinson's state of mind under N.C. R. Evid. 803(3); and (2) evidence of a prior inconsistent statement for impeachment purposes. Defendant, however, did not argue before the trial court that Russell's testimony was admissible under Rule 803(3)'s hearsay exception. When plaintiff objected to the admission of Russell's testimony at trial, defendant stated: "My only argument would be that it's admissible for purposes of impeachment."

It is well-established that "a contention not raised and argued in the trial court may not be raised and argued for the first time in the appellate court." *Wood v. Weldon*, 160 N.C. App. 697, 699, 586 S.E.2d 801, 803 (2003), *disc. review denied*, 358 N.C. 550, 600 S.E.2d 469 (2004). Consequently, the admissibility of Russell's testimony under one of the exceptions to the hearsay rule is not properly before this Court. *See State v. Hester*, 343 N.C. 266, 271, 470 S.E.2d 25, 28 (1996) (holding defendant was precluded from arguing on appeal that excluded testimony was admissible under hearsay exception when he did not raise argument at trial).

As to defendant's argument that Russell's testimony was admissible for impeachment purposes, we need not address this contention because even assuming *arguendo* that the trial court erred in excluding the evidence for any purpose other than corroboration of Robinson's testimony, defendant has failed to demonstrate on appeal that he was prejudiced as a result of the alleged error. As this Court has emphasized, "[t]he exclusion of evidence constitutes reversible error only if the appellant shows that a different result would have likely ensued had the error not occurred." *Forsyth County v. Shelton*, 74 N.C. App. 674, 678, 329 S.E.2d 730, 734, *appeal dismissed and disc. review denied*, 314 N.C. 328, 333 S.E.2d 484 (1985).

In his brief, defendant does not raise the issue of prejudice, instead limiting his argument to the assertion that Russell's testimony was "admissible" and thus "[i]t was error for the court to strike [her] testimony . . . ." Accordingly, defendant has failed to establish that he is entitled to a new alimony hearing. *See Nunn v. Allen*, 154 N.C. App. 523, 531, 574 S.E.2d 35, 41 (2002) (holding appellant was not entitled to new trial where he "neither argued nor demonstrated that he was prejudiced by" trial court's evidentiary ruling), *disc. review denied*, 356 N.C. 675, 577 S.E.2d 630 (2003). For these reasons, this argument is overruled.

### E. Motion to Amend Order

[5] Defendant further argues that the trial court erred in denying his motion, filed pursuant to N.C. R. Civ. P. 52 and N.C. R. Civ. P. 59, to

amend the alimony order. Defendant's argument amounts to a one-sentence reference to his previous contention that the trial court erred in determining that plaintiff did not engage in cohabitation. As defendant fails to present any additional argument regarding his motion to amend, we conclude that the trial court did not err in denying his motion. *See Everhart v. O'Charley's Inc.*, 200 N.C. App. 142, 161, 683 S.E.2d 728, 742 (2009) ("[Defendant's] arguments . . . repeat the contentions we found unpersuasive regarding its JNOV motion. As [defendant] fails to make any separate and distinct arguments in support of its motion for a new trial, we hold that the trial court did not err in denying [defendant's] motion for a new trial."). The trial court's 8 February 2012 alimony order is, therefore, affirmed.

## II. 30 April 2012 Order

### A. Availability of Retroactive Alimony under N.C. Gen. Stat. § 50-16.3A

[6] Defendant also appeals from the trial court's 30 April 2012 order in which the court ordered, among other things, that defendant pay retroactive alimony for the period 3 April 2009 to 25 January 2010. Defendant contends that the current statute governing the award of alimony, N.C. Gen. Stat. § 50-16.3A (2011), does not permit the trial court to award alimony for the period between the date of separation and the date the alimony claim is filed. We disagree.

In construing the prior version of the statute governing alimony, N.C. Gen. Stat. § 50-16.3 (repealed by 1995 N.C. Sess. Laws ch. 319, § 1, effective 1 October 1995), this Court held that a dependent spouse may be entitled to alimony not merely from the date the claim for alimony is filed but rather from the date of the parties' separation. *Austin v. Austin*, 12 N.C. App. 390, 393, 183 S.E.2d 428, 430 (1971); *accord Stickel v. Stickel*, 58 N.C. App. 645, 648, 294 S.E.2d 321, 323 (1982) (relying on Austin for this proposition); *Gardner v. Gardner*, 40 N.C. App. 334, 341, 252 S.E.2d 867, 871-72 (same), *disc. review denied*, 297 N.C. 299, 254 S.E.2d 917 (1979); *Guy v. Guy*, 27 N.C. App. 343, 346, 219 S.E.2d 291, 293-94 (1975) (same).

In 1995, the General Assembly "effect[ed] a 'wholesale revision' in North Carolina alimony law" by repealing § 50-16.3 and replacing it with § 50-16.3A. *Brannock v. Brannock*, 135 N.C. App. 635, 641, 523 S.E.2d 110, 114 (1999) (quoting Sally B. Sharp, *Step by Step: The Development of the Distributive Consequences of Divorce in North Carolina*, 76 N.C. L. Rev. 2018, 2018 (1998)), *disc. review denied*, 351 N.C. 351, 543 S.E.2d 123 (2000). In *Brannock*, this Court held that the 1995 changes

to the alimony statute were so extensive that a claim for alimony under the current statute is "fundamentally different" than a claim under the prior, now repealed, statute. *Id.* at 646, 523 S.E.2d at 117 (holding alimony claim filed under prior alimony statute and voluntarily dismissed under N.C. R. Civ. P. 41 could not be re-filed within one year under current statute because second claim "constituted a new and distinct claim for alimony").

Defendant relies on our holding in Brannock to argue that under the current statute – § 50-16.3A – alimony may not be awarded "retroactively." However, while Brannock does discuss the changes in North Carolina law regarding alimony, nothing in the opinion references any intent by the General Assembly to eliminate retroactive alimony or to abrogate our rulings in Austin and its progeny. *See State ex rel. Cobey v. Simpson*, 333 N.C. 81, 90, 423 S.E.2d 759, 763 (1992) (explaining that courts may, in interpreting statutes, "presume that the legislature acted with full knowledge of prior and existing law and its construction by the courts").

Defendant cites no other authority in support of his position. We agree with Professor Reynolds' statement in her treatise that "[t]he 1995 legislation did not change the law on the period for which the court may order alimony. The court may order the award *effective* from the date of separation if the facts so warrant." *Lee's Family Law* § 9.50, at 405 (emphasis added). Accordingly, we conclude, consistent with longstanding precedent, that § 50-16.3A authorizes the trial court, in appropriate circumstances, to award alimony for the period between the parties' date of separation and the filing of the claim for alimony.

## B. Sufficiency of Findings Regarding Retroactive Alimony

[7] Defendant's final argument on appeal is that the trial court's findings are insufficient to support its award of retroactive alimony. In light of the circumstances in this case, we are not persuaded.

By consent order entered 16 February 2010, defendant agreed to pay $5,000 per month in postseparation support for 24 months, beginning on 25 January 2010. The trial court entered on 8 February 2012 its order in which it rejected defendant's defense of cohabitation and determined that plaintiff was entitled to alimony, with payment beginning on 1 February 2012 – corresponding to the termination of postseparation support payments. Due to an apparent oversight, although the parties presented evidence relating to the period from 3 April 2009 to 25 January 2010, the trial court did not include this period within its alimony award in the 8 February 2012 order. After plaintiff filed a

motion requesting that the trial court amend its 8 February 2012 order to include the retroactive alimony, the trial court, rather than amending the order, simply entered another order in which it awarded plaintiff the requested retroactive alimony.

Reading the two orders together, we believe that the trial court's findings are sufficient to support the entirety of the award. *See Bailey v. State*, 352 N.C. 127, 135, 529 S.E.2d 448, 453-54 (2000) (construing multiple orders together to clarify what had been determined by trial court). The trial court's findings regarding plaintiff's entitlement to alimony as well as its findings on the amount, duration, and manner of payment are set out in its 8 February 2012 order. *See* N.C. Gen. Stat. § 50-16.3A(c) ("The court shall set forth the reasons for its award or denial of alimony and, if making an award, the reasons for its amount, duration, and manner of payment."). The 30 April 2012 order simply awards plaintiff alimony for a period of time that was apparently omitted through inadvertence from the 8 February 2012 order.

Notably, defendant does not contend – beyond his argument regarding cohabitation – that the trial court's findings in either of its orders lack an adequate evidentiary basis or are insufficient to support the entire alimony award. Rather, defendant simply argues that, in isolation, the court's 30 April 2012 order does not contain adequate findings to support the award of retroactive alimony. The two orders, however, when read in conjunction, do just that. As such, we overrule defendant's argument and affirm the trial court's 30 April 2012 order.

### Conclusion

For the reasons stated above, we affirm both the trial court's 8 February 2012 and 30 April 2012 orders.

AFFIRMED.

Judges HUNTER and McCULLOUGH concur.