STROUD, Judge, dissenting.
Because I believe that the trial court and the majority opinion have conflated two separate requirements of N.C. Gen. Stat. §§ 5A-22 (2015) and 5A-21(a) (2015), I dissent. Willfulness and ability are two different things, and the trial court erred by not considering ability.
*403 The majority has set out the long procedural history of this case well and I will not repeat it.
Defendants sought release under N.C. Gen. Stat. § 5A-22(a), which provides:
(a) A person imprisoned for civil contempt must be released when his civil contempt no longer continues . The order of the court holding a person in civil contempt must specify how the person may purge himself of the contempt. Upon finding compliance with the specifications, the sheriff or other officer having custody may release the person without a further order from the court.
(Emphasis added).
Defendants have previously been held in civil contempt, but the question under N.C. Gen. Stat. § 5A-22 requires the trial court to consider whether a contemnor could still be held in civil contempt as of the time of his motion for release, since he must be released "when his civil contempt no longer continues."
*15 N.C. Gen. Stat. § 5A-22(a). We must then refer to N.C. Gen. Stat. § 5A-21(a) for the definition of "civil contempt" and to determine if the civil contempt continues:
(a) Failure to comply with an order of a court is a continuing civil contempt as long as:
(1) The order remains in force;
(2) The purpose of the order may still be served by compliance with the order;
(2a) The noncompliance by the person to whom the order is directed is willful; and
(3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.
(Emphasis added).
Here, the order remains in force and the purpose of the order may still be served by compliance. The defendants' dispute addresses subsections (2a) and (3), which are two separate and independent requirements, and the trial court must address both. The trial court, and the majority opinion, conflate these two subsections. Under N.C. Gen. Stat. § 5A-21(a), the trial court must find both that "[t]he noncompliance by the person to whom the order is directed is willful;" and "[t]he person to *404 whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order." N.C. Gen. Stat. § 5A-21(a)(2a),(3).
Defendants' noncompliance is willful under N.C. Gen. Stat. § 5A-21(a)(2a). They stubbornly refuse to recognize that the land is not theirs, and they refuse to perform the one part of the order they have the ability to perform: signing a piece of paper with their promise not to go on the land. But to be in continuing civil contempt, defendants must also be "able to comply with the order" or "able to take reasonable measures that would enable" them to comply with the order. N.C. Gen. Stat. § 5A-21(a)(3). Logically, they must be able to comply with all of the provisions of the order, or they cannot comply with the order. Being able to comply with a part of the order-signing a promise not to go on the land-is not the same as ability to comply with the entire order. Nor would the primary purpose of the order be served by this symbolic act, since the primary purpose of the order is to make the defendants remove the structures on the land.
But the trial court erred by failing even to consider defendants' evidence of their inability to comply with the order. The trial court specifically found it would not make findings regarding defendants' inability to comply only because defendants stated their intent not to comply:
22. Other evidence was presented on other factual issues concerning the defendants' financial condition, the heavy equipment still owned by Melvin Davis and its condition, the expense of moving the structures off of the property, the defendants' health, and other issues.
23. The Court makes no findings as to these matters because defendants' failure to sign the necessary written document pledging to not again go upon the property, and their avowed insistence to the contrary that they would indeed go back on the property, is dispositive on the controlling issue as to whether defendants have purged or are even willing to purge their contempt.
(Emphasis added).
The fact that defendants are obstinate and foolish does not absolve the trial court of its responsibility to consider that defendants may be obstinate, foolish, and unable to comply with the order. I will not recite defendants' evidence in detail, but it shows generally that although defendants once had the ability to demolish the structures on *405 the property themselves, since they had the equipment to do this work, their ability to do the work themselves is gone. The equipment has been sitting idle since they were imprisoned in 2011 and the equipment was at one point submerged under water during a storm. Defendants also presented evidence that the demolition of the structures would cost approximately $46,000.00. Plaintiff does not dispute this cost. Defendant Davis presented evidence that his only income is from social security. He had about $100.00 in a bank account in 2011; he has no other savings *16 or retirement accounts. He was 69 years old at the time of the hearing and had suffered a back injury while in jail when he fell down the stairs. Defendant Reels presented evidence he has no income, no bank account, no retirement account, and has had no income since 2011. He was 59 years old at the time of the hearing and had been diagnosed with diabetes. He has no medical insurance and has received medical treatment in jail. Their financial situation has not improved with incarceration since 2011. There is absolutely no reason to believe that their ability to do the demolition themselves will improve with time or that their financial circumstances will improve with continued incarceration.
In most contempt cases, the contemnor claims he is willing to perform, but unable; in such case, the trial court "must first make a finding of a defendant's present ability to comply with an order before concluding that a defendant is in civil contempt of an order." Oakley v. Oakley , 165 N.C. App. 859, 864, 599 S.E.2d 925, 929 (2004). At other times, the contemnor refuses to perform, but he is clearly able to perform. See, e.g., Farr v. Pitchess , 409 U.S. 1243, 1243, 93 S.Ct. 593, 593, 34 L.Ed.2d 655, 657 (1973) (reporter who refused to disclose the names of his sources was found to be in civil contempt). The scenario before us in this case is a rare situation in which the contemnors maintain their unwillingness to perform, and they are in fact unable to perform, even if they wanted to. Perhaps this reference is obscure, but the defendants are essentially in the position of the Black Knight in the movie "Monty Python and the Holy Grail."[1] The Black Knight insists that "None shall pass" through the path in the forest which he guards; the defendants insist the same as to the land they claim. King Arthur-who had the legal authority as king to order the Black Knight to let him pass-seeks to pass through the forest, but the Black Knight refuses to comply with his order. King Arthur and the Black Knight then engage in a sword fight. Even after King Arthur has cut off both of the Black Knight's arms and legs, he still insists that he will continue to fight and that no one may pass-although *406 he cannot do anything. King Arthur simply says, "We'll call it a draw," and continues on his way, leaving the Black Knight with no one to listen to his protests.
Here, the trial court and the plaintiff should follow King Arthur's wise lead and leave defendants behind. If defendants do not have the ability to perform, or to take reasonable measures to perform, and there is no reason to believe that they ever will have the ability to perform, they should not remain incarcerated forever for "continuing civil contempt" under N.C. Gen. Stat. §§ 5A-21(a) and 5A-22. The United States Supreme Court has noted that if compliance is factually impossible, there is no reason for civil contempt:
While the court is bound by the enforcement order, it will not be blind to evidence that compliance is now factually impossible. Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action. It is settled, however, that in raising this defense, the defendant has a burden of production.
U.S. v. Rylander , 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521, 528 (1983) (citations omitted).
Defendants met their burden of producing evidence of their inability to perform and their inability to take reasonable measures to perform; their evidence was uncontroverted. The trial court simply refused to make findings of fact based upon their evidence. Based upon the standard used by the trial court and the majority opinion, assuming defendants continue to state their refusal to give up their land, no matter what evidence they produce of their abject poverty and inability to perform, they will remain imprisoned for the rest of their lives. But the trial court is required by N.C. Gen. Stat. § 5A-21(a)(3) to make findings of fact regarding defendants' actual ability to comply or to take reasonable measure to comply, and the trial court failed to make these findings. I would therefore reverse and remand to the trial court for it to make findings of fact as to defendants' actual ability to perform all of the purge conditions *17 of the 2011 Contempt Order, as well as any conclusions of law supported by those findings of fact.
This is a dissent, and the trial court may chose to ignore it completely. But this case will no doubt be considered again by the trial court in the future. I would encourage the trial court to consider some different method of dealing with this situation, preferably one which will not *407 continue to waste hundreds of thousands of dollars in public funds and occupy space in the Carteret County jail.
Besides the trial court's error in failing to consider the evidence of defendants' inability to comply with the order, I must note the futility of this case and the tremendous cost it has imposed, and will continue to impose, on the taxpayers of North Carolina-and particularly Carteret County. Indeed, this is one reason why a contemnor's ability to comply is crucial to continuing incarceration indefinitely for civil contempt; if the contemnor has no ability to comply, public funds and resources are wasted seeking to accomplish an impossibility. And since the majority has approved the trial court's refusal to consider defendants' ability to comply, the costs will only continue to increase indefinitely. According to defendant's motion, the cost of housing each inmate in the Carteret County Jail is about $60.00 per day, or $21,900.00 per year, and any costs for defendants' medical care are not included in this amount. Both defendants suffer from conditions which require medical care. Defendants have been taking up space in jail since 2011-space sorely needed for actual criminals. Defendants' costs will most likely continue to increase, due to their ages and medical conditions. This simple property dispute has been transformed into a state-funded enforcement action for the benefit of the plaintiff. Plaintiff has incurred attorney fees for this matter for years, and I cannot fathom why plaintiff does not simply bulldoze the structures remaining on the property and proceed with whatever plans for development it may have. This would be far cheaper and more productive that continuing to insist that two destitute and stubborn men do something they are not capable of doing. Defendants will never have the ability or inclination to do the demolition for Plaintiff. If defendants are released from jail and enter the property-and they probably will-I have full confidence that Carteret County's law enforcement can handle the situation. Defendants may end up in jail again after they are arrested for trespassing. But at least defendants' inability to pay for the removal of structures from the property will be irrelevant in their criminal prosecution. And the penalty for trespassing is not life imprisonment.
I therefore respectfully dissent and would reverse and remand for the trial court to make findings of fact and conclusions of law as dictated by N.C. Gen. Stat. § 5A-21.

Monty Python and the Holy Grail (Michael White Prods. 1975).