BRYANT, Judge.
 

 *466
 
 The trial court did not err in awarding attorney's fees under N.C. Gen.Stat. § 50-13.6 where the court found that defendant acted in good faith in filing her custody action. Additionally, where the findings of fact are supported by competent evidence and, in turn, support its conclusions of law, we affirm the trial court's order concluding that defendant was not cohabiting as defined in N.C. Gen.Stat. § 50-16.9(b) and denying plaintiff's motion to terminate alimony.
 

 Plaintiff-father and defendant-mother were married on 25 April 1992. During their marriage, the couple had two children. The parties subsequently separated on 12 April 2012. On 11 May 2012, plaintiff filed his Complaint seeking child custody, divorce from bed and board, equitable distribution, injunctive relief, and interim distribution. Defendant then filed an Answer and Counterclaim seeking child custody, child support, post separation support, permanent alimony, equitable distribution, and attorney's fees.
 

 On 30 May 2013, the parties were divorced, and on 13 June 2013, a judgment of equitable distribution and an order of permanent alimony was entered. On 3 September 2013, plaintiff filed a motion, pursuant to N.C. Gen.Stat. § 50-16.9, to terminate his alimony alleging that defendant was cohabiting with William Wallace Respess. Defendant filed a reply to plaintiff's motion to terminate alimony on 13 September 2013. On 2 January 2014, following an evidentiary hearing, the trial court entered an order denying plaintiff's motion to terminate alimony. Plaintiff timely filed notice of appeal of this order.
 

 On 22-25 April 2014, an evidentiary hearing was held on the issue of custody and support. At this hearing, plaintiff advocated for primary custody of the children, as did defendant. An order of custody was entered, which awarded permanent primary custody of the children to plaintiff and permanent secondary custody of the children to defendant. Additionally, it was ordered that the children would live primarily with their father and that plaintiff father would have final decision-making authority regarding the children.
 

 Defendant also made a claim for attorney's fees, which plaintiff opposed. The trial court entered an order granting defendant's request
 
 *467
 
 for attorney's fees. On 14 April 2014, plaintiff filed a Motion for Non-Disbursement which was denied on 27 May 2014. On 30 June 2014, plaintiff entered an amended notice of appeal from the 2 January 2014 Order on Alimony and the 27 May 2014 orders as to child custody, attorney's fees, and Plaintiff's Motion for Non-Disbursement.
 

 _________________________
 

 On appeal, plaintiff argues that the trial court erred when it concluded that (I) defendant was acting in good faith in bringing her child custody action; and (II) defendant was not engaging in cohabitation.
 

 I
 

 Plaintiff first argues that the trial court erred in concluding that defendant was acting in good faith in bringing her child custody action, and therefore, the trial court had no statutory authority to award attorney's fees to defendant. We disagree.
 

 North Carolina General Statutes, section 50-13.6 provides the following:
 

 [i]n an action or proceeding for the custody or support, or both, of a minor child, including a motion in the cause for the modification or revocation of an existing order for custody or support, or both, the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in
 
 good faith
 
 who has insufficient means to defray the expense of the suit.
 

 N.C. Gen.Stat. § 50-13.6 (2013) (emphasis added). Therefore, the trial court is required to make two findings of fact in order
 
 *66
 
 to award attorney's fees under N.C.G.S. § 50-13.6 : "that the party to whom attorney's fees were awarded was (1) acting in good faith and (2) has insufficient means to defray the expense of the suit."
 
 Burr v. Burr,
 

 153 N.C.App. 504
 
 , 506,
 
 570 S.E.2d 222
 
 , 224 (2002) (citation omitted).
 

 The Supreme Court of North Carolina has defined good faith as "honesty of intention, and freedom from knowledge of circumstances which ought to put [one] upon inquiry" that a claim is frivolous.
 
 Bryson v. Sullivan,
 

 330 N.C. 644
 
 , 662,
 
 412 S.E.2d 327
 
 , 336 (1992) (quoting
 
 Black's Law Dictionary
 
 693 (6th ed.1990)). Because the element of good faith "is seldom in issue ... a party satisfies it by demonstrating that he or she seeks custody in a genuine dispute with the other party." 3-13
 
 Lee's North Carolina Family Law
 
 § 13.92 (2014).
 

 *468
 
 Here, it is undisputed that defendant was in a genuine dispute with plaintiff-plaintiff initiated a claim for custody and defendant brought a counterclaim for custody. Rather than challenging the evidence, offering any case law or precedent, or arguing that the legal conclusion of good faith was not supported by the facts found by the trial judge, plaintiff's sole argument seems to be that a person who requests more time with her children in her claim for custody is acting in bad faith when she should know that she is a poor parent. Almost seven pages of plaintiff's brief are dedicated to factual findings regarding defendant's struggle with drug addiction. In order to accept plaintiff's position, this Court would have to find that some parents should simply know that, because they are unfit parents or have made mistakes in the past, they will lose any attempts to modify custody arrangements, and therefore any attempts to do so could not be made in good faith. To support such an outcome would be to negate the efforts made by parents, such as defendant, to correct previous mistakes and become better parents and would serve to bar such parents from bringing custody actions. This position espoused by plaintiff is unsupportable and contrary to settled law. This portion of plaintiff's argument is overruled.
 

 The second finding of fact the trial court must make when awarding attorneys' fees under N.C.G.S. § 50-13.6 is that the party to whom attorneys' fees are being awarded "has insufficient means to defray the expense of the suit."
 
 Burr,
 

 153 N.C.App. at 506
 
 ,
 
 570 S.E.2d at 224
 
 .
 

 Here, defendant's first Financial Affidavit filed 26 September 2012 reflects defendant's total net monthly income, gross less deductions, as $1,516.67, with anticipated fixed household expenses listed as $3,979.68. On 17 May 2013, defendant filed an Amended Financial Affidavit, which listed her total net monthly income, after deductions, as $820.00, with total anticipated fixed household expenses totaling $3,669.68. The Amended Financial Affidavit also noted the following:
 

 On 10/12/12 ... [d]efendant was award [sic] lump sum post separation support in the amount of $33,000.00, which was payable on or about 12/1/12. The post separation award was for $5,500.00 per month for a period of six months, which will be exhausted at the time of this hearing on 6/3/13.
 

 On 22 May 2013, defendant filed a 2nd Amended Financial Affidavit, which again listed defendant's total net income available after deductions as $820.00, with total anticipated household expenses listed as $3,735.68. The 2nd Amended Affidavit also listed a "one time cost of
 
 *469
 
 $790.00 for brakes and rotors." The Financial Affidavits filed by defendant also noted that (1) defendant owns no real estate individually, and (2) defendant and plaintiff together own real estate having an approximate value of $2,319,393.00 and an approximate mortgage debt of $2,397,000.00.
 

 In
 
 Lawrence v. Tise,
 
 this Court reversed and remanded a trial court order denying an award of attorney's fees where the trial court's finding that plaintiff-mother had the means to pay her attorney was not supported by the evidence.
 
 107 N.C.App. 140
 
 , 153-54,
 
 419 S.E.2d 176
 
 , 185 (1992). In
 
 Lawrence,
 
 the evidence revealed,
 
 inter alia,
 
 that plaintiff-mother
 

 incurred legal fees ... in the amount of $6741.00; that her monthly gross income is $215.00 and that her monthly expenses exceed her gross income ... and that she
 
 *67
 
 owns a home which she purchased in 1986 for $50,000.00 which has a mortgage of $40,000.00, and an adjoining vacant lot with a tax value of $10,000.00.
 

 Id.
 
 at 153,
 
 419 S.E.2d at 184
 
 .
 

 Here, as in
 
 Lawrence,
 
 the evidence similarly shows that defendant had insufficient means to defray the costs of her suit. In the trial court's Attorney's Fee Order, entered 27 May 2014, the trial court found in Finding of Fact No. 4 that defendant had "insufficient means to defray the attendant expenses of her suit for custody." In Finding of Fact No. 8, the trial court stated as follows: "In the tax year 2013, Plaintiff's earned income was $613,464 (about $51,122 per month) and [d]efendant's earned income was $1,560 per month. Both parties have about the same earned income now as they did in 2013." In Finding of Fact No. 7, the trial court found, after reviewing three Attorney's Fees Affidavits, that, from 4 December 2013 up to April 2014, defendant had incurred some $8,419 in attorneys' fees and $1,228 in costs. The third affidavit, which covered the April trial and costs and preparation of defendant's closing argument, showed that defendant incurred fees in the amount of $16,075 and costs of $1,109.
 

 Additionally, unlike the plaintiff-mother in
 
 Lawrence,
 
 here, defendant owns no real estate or other property individually.
 
 See
 

 Lawrence,
 

 107 N.C.App. at 153
 
 ,
 
 419 S.E.2d at 184
 
 . The only property defendant does have an interest in she owns together with her husband and the mortgage debt encumbering the property exceeds the current market value of the property by approximately $77,000.00.
 

 *470
 
 Accordingly, the trial court's findings of fact support its conclusions of law, specifically, that "[d]efendant is without sufficient funds with which to defray the necessary expenses attendant to her suit for custody, [and] ... [d]efendant is entitled to an award of attorney's fees pursuant to N.C. Gen.Stat. § 50-13.6."
 

 The trial court's findings of fact that defendant was acting in good faith and has insufficient means to defray the expense of the suit support its conclusion of law awarding attorneys' fees to defendant. Accordingly, plaintiff's argument is overruled.
 

 II
 

 Plaintiff next argues that the trial court erred by concluding that defendant did not engage in cohabitation. Specifically, plaintiff contends that defendant and Respess have mutually and voluntarily assumed "those marital rights, duties, and obligations which are usually manifested by married people." N.C. Gen.Stat. § 50-16.9(b) (1995).
 

 In reviewing orders entered by a trial court in non-jury proceedings, this Court is "strictly limited to determining whether the record contains competent evidence to support the trial court's findings of fact and whether those findings, in turn, support the trial court's conclusions of law."
 
 Smallwood v. Smallwood,
 
 --- N.C.App. ----, ----,
 
 742 S.E.2d 814
 
 , 820 (2013) (internal quotation marks and citation omitted). Further, in performing this review, this Court may not "engage in a
 
 de novo
 
 review of the evidence and substitute its judgment for that of the trial court."
 

 Id.
 

 (citing
 
 Coble v. Coble,
 

 300 N.C. 708
 
 , 712-13,
 
 268 S.E.2d 185
 
 , 189 (1980) ). Neither is it for this Court "to determine
 
 de novo
 
 the weight and credibility to be given to evidence disclosed by the record on appeal."
 
 Coble,
 

 300 N.C. at 712-13
 
 ,
 
 268 S.E.2d at 189
 
 .
 

 Section 50-16.9(b) of the General Statutes states in pertinent part that "[i]f a dependent spouse who is receiving postseparation support or alimony from a supporting spouse ... remarries or engages in cohabitation, the postseparation support or alimony shall terminate." N.C. Gen.Stat. § 50-16.9(b). The statute defines "cohabitation" as:
 

 the act of two adults dwelling together continuously and habitually in a private heterosexual relationship, even if this relationship is not solemnized by marriage, or a private homosexual relationship. Cohabitation is evidenced by the voluntary mutual assumption of those marital rights, duties, and obligations which are usually manifested by married people, and which include, but are not necessarily dependent on, sexual relations.
 

 *471
 

 Id.
 

 The North Carolina Supreme Court has formulated a two-part test for cohabitation:
 

 *68
 
 "[t]o find cohabitation, there must be evidence of: (1) a 'dwelling together continuously and habitually' of two adults and (2) a 'voluntary mutual assumption of those marital rights, duties and obligations which are usually manifested by married people.' "
 
 Bird v. Bird,
 

 363 N.C. 774
 
 , 779-80,
 
 688 S.E.2d 420
 
 , 423 (2010) (quoting N.C.G.S. § 50-16.9(b) (2009) ).
 

 This two-part test must also be applied in light of the legislative policy underlying N.C. Gen.Stat. § 50-16.9(b). For the first element of the test, the statutory text:
 

 reflects several of the goals of the "live-in-lover statutes," terminating alimony in relationships that probably have an economic impact, preventing a recipient from avoiding in bad faith the termination that would occur at remarriage, but not the goal of imposing some kind of sexual fidelity on the recipient as the condition of continued alimony. The first sentence [of the statute] reflects the goal of terminating alimony in a relationship that probably has an economic impact. "Continuous and habitual" connotes a relationship of some duration and suggests that the relationship must be exclusive and monogamous as well. All of these factors increase the likelihood that the relationship has an economic impact on the recipient spouse.
 

 Craddock v. Craddock,
 

 188 N.C.App. 806
 
 , 810,
 
 656 S.E.2d 716
 
 , 719 (2008) (quoting 2 Suzanne Reynolds,
 
 Lee's North Carolina Family Law
 
 § 9.85, at 493-94 (5th ed.1999)) [hereinafter
 
 Lee's Family Law
 
 ].
 

 For the second element of the cohabitation test, the goal is "to terminate postseparation support and alimony when the relation has an economic effect and when someone is acting in bad faith to avoid termination."
 
 Smallwood,
 
 ---N.C.App. at ----,
 
 742 S.E.2d at 818
 
 (quoting
 
 Lee's Family Law
 
 § 9.85, at 494). This is because "the more indicia of 'marital rights, duties, and obligations,' the more chance that the decision not to marry is motivated only by a desire to continue receiving alimony."
 

 Id.
 

 at ----,
 
 742 S.E.2d at 818
 
 (quoting
 
 Lee's Family Law
 
 § 9.85,
 
 supra,
 
 at 494).
 

 The trial court implicitly concluded that the first element of the cohabitation test was met, in that the trial court found that "the relationship between [d]efendant and Mr. Respess is habitual and monogamous and has had an economic impact, to [d]efendant's benefit." Therefore, the core issue is whether the trial court's conclusion that defendant and Respess did not voluntarily and mutually assume those marital rights,
 
 *472
 
 duties, and obligations which are usually manifested by married people was supported by its factual findings.
 

 When determining whether a couple voluntarily assumes those marital rights, duties, and obligations which are usually manifested by married people, the trial court must consider the totality of the circumstances.
 
 Smallwood,
 
 ---N.C.App. at ----,
 
 742 S.E.2d at 819
 
 (citation omitted). "Under the 'totality of the circumstances test,' a court must evaluate all the circumstances of the particular case, with no single factor controlling."
 

 Id.
 

 (citing
 
 Fletcher v. Fletcher,
 

 123 N.C.App. 744
 
 , 750,
 
 474 S.E.2d 802
 
 , 806 (1996) ).
 

 In
 
 Smallwood,
 
 this Court held that the plaintiff and her paramour, Robinson, did not engage in marital conduct when,
 
 inter alia,
 
 the following facts were found by the trial court below: (1) Robinson maintained his own residence and did not keep clothes or other personal items at the plaintiff's residence; (2) Robinson did not pay any expenses for the plaintiff's residence, nor attend to any other chores at the plaintiff's residence; and (3) Robinson and plaintiff did not refer to each other as husband and wife.
 

 Id.
 

 at ----,
 
 742 S.E.2d at 818-19
 
 .
 

 Additionally, this Court has held that when the "parties [do] not share financial obligations, exchange gifts or purchase items for each other
 
 without being reimbursed for the money spent
 
 [,]" this factor can support a trial court's determination that a couple has not assumed those marital rights, duties, and obligations which are usually manifested by married people.
 
 Russo v. Russo,
 
 No. COA11-162,
 
 2011 WL 6035580
 
 , *5 (N.C.Ct.App. Dec. 6, 2011) (unpublished) (emphasis added) (citations and quotation marks omitted).
 

 In its Order Denying Motion to Terminate Alimony and Denying Motion for Civil Contempt
 
 *69
 
 entered 2 January 2014, the trial court made the following findings on the issue of cohabitation:
 

 (3) Defendant/Wife began a sexual relationship with William Wallace Respess sometime in March of 2013. The couple has been monogamous since said time. They spend virtually all overnights together except when Defendant's children are with her. They usually stay at Mr. Respess' residence. They have traveled together several times, sharing a room. They have spent time with both of their families, as well as numerous friends of both, and have entertained friends several times at Mr. Respess' residence. They have had family photographs made, some including Defendant's daughters. They are engaged to be married and plan on
 
 *473
 
 marrying in mid-May, 2014, immediately after Mr. Respess is divorced from is [sic] present wife, from whom he separated in March of 2013.
 

 (4) Defendant/Wife maintains her own residence, where Mr. Respess never spends the night. Neither party keeps clothes or other personal items at the home of the other.
 

 (5) Financially, Mr. Respess has provided funds to Defendant or paid bills for her directly, on numerous occasions. Mr. Respess has made payments so Defendant would not lose her town home, her internet service, or the furniture she was buying on time. Some of the funds he has provided were for everyday living expenses. The consent judgment entered by Plaintiff and Defendant on June 13, 2013, included a provision for Defendant to receive a 2007 BMW vehicle which she would "immediately trade ... for a newer vehicle to be titled in her name." Defendant was unable to get credit for this purchase, despite Mr. Respess' willingness to co-sign the note, and Mr. Respess then bought the 2008 Buick automobile she had chosen, in his name. He also assisted her with car payments on this car (which she drives) and has added it to his car insurance policy.
 

 (6) Both Defendant and Mr. Respess described all of the above transactions as "loans." While the Court is not convinced that their original intent was that these funds be "loans," it is undisputed that Defendant, upon receiving $200,000 via a Qualified Domestic Relations Order from a retirement account of Plaintiff/Husband's (pursuant to the consent judgment), promptly paid Mr. Respess all that they agreed she owed him. That amount was paid on October 5, 2013, in the amount of $19,844.00; part of said funds was attorney fees Defendant owed for Mr. Respess' representation of Defendant in this matter.
 

 (7) Mr. Respess has also given Defendant a diamond engagement ring (in September, 2013), two outfits, a blouse, and two pieces of luggage. Mr. Respess has paid all the costs of the parties' trips together. When they eat out together, Mr. Respess pays. When they cook in together, he usually pays for the groceries.
 

 *474
 
 (8) Mr. Respess and Defendant expect him to function as a stepparent to Defendant's daughters, and he has already begun assuming that role. For example, Mr. Respess attended the school orientation for the girls in August along with ... Defendant. Defendant and Mr. Respess attend Sunday School together on the Sundays when the girls are not with Defendant.
 

 (9) Defendant and Mr. Respess have told no one that they are married. They tell everyone they are engaged. They have no joint banking accounts.
 

 ...
 

 (12) Here the relationship between Defendant and Mr. Respess is habitual and monogamous and has had an economic impact, to Defendant's benefit. But the Court is not convinced that the Defendant's motivation, in not marrying Mr. Respess, is to continue receiving alimony. First, of course, is the legal impediment of Mr. Respess' current marital status. But also, this couple plans to marry as soon as they legally can, which will result in the loss, by Defendant/Wife, of more than four years of the five years alimony for which she bargained. If Defendant wanted to keep the alimony coming, these marriage plans should not be made. Continuing to receive alimony does not appear to be her
 
 *70
 
 primary motivation, much less her only one.
 

 (13) The above consideration, along with the separate residential arrangements, offset the other facts which would favor allowing Plaintiff/Husband's Motion to Terminate Alimony.
 

 Here, like the couple in
 
 Smallwood,
 
 defendant and Respess each maintained their own respective residences and Respess did not keep any clothes or personal items at defendant's home. Additionally, like the couple in
 
 Smallwood,
 
 defendant and Respess have not told anyone that they are married. Finally, it is worth noting that in
 
 Russo,
 
 an unpublished opinion, this Court noted that when parties did not share financial obligations or exchange gifts or purchase items for one another without being reimbursed for the money spent, this was a strong indication that the couple did not assume "those marital rights, duties, and obligations which are usually manifested by married people."
 
 Russo,
 

 2011 WL 6035580
 
 at *5.
 

 *475
 
 Here, Respess provided funds to defendant or paid bills for her on numerous occasions, but she repaid him for this assistance. The trial court found that, while the parties' description of these transactions as " loans" was not a convincing one, defendant did pay Respess a sum of $19,844.00 on 5 October 2013, which was the amount the couple agreed defendant owed Respess. Thus, the trial court's legal conclusion that defendant and Respess did not assume those marital rights, duties, and obligations which are usually manifested by married people was supported by the trial court's findings of fact.
 

 The trial court's conclusion is also supported by the trial court's reasonable inference that defendant's motivation in not marrying Respess was not made in bad faith in order to keep the alimony coming. A trial judge is entitled, after considering all the evidence, to draw "inferences as are reasonable and proper under the circumstances, even though another different inference, equally reasonable, might also be drawn therefrom."
 
 Hodges v. Hodges,
 

 257 N.C. 774
 
 , 780,
 
 127 S.E.2d 567
 
 , 571 (1962) (citation and quotation marks omitted).
 

 As stated previously, the primary legislative policy in making cohabitation, not just remarriage, grounds for termination of alimony was to evaluate the economic impact of a relationship on the dependent spouse and, consequently, avoid bad faith receipts of alimony. The trial court's inference finding that a desire to continue receiving alimony was not a primary motive in not remarrying is yet another factual finding that supports the trial court's conclusion defendant and Respess were not cohabiting.
 

 Again, we reiterate that this Court does not review the trial court's order
 
 de novo,
 
 nor can we substitute our judgment for that of the trial court.
 
 See
 

 Coble,
 

 300 N.C. at 712-13
 
 ,
 
 268 S.E.2d at 189
 
 . Here, competent evidence in the record supports the trial court's findings of fact and those findings of fact in turn support the conclusions of law. Accordingly, plaintiff's argument is overruled.
 

 We find that the record supports the orders of the trial court concluding (I) defendant's child custody action was brought in good faith, and she is entitled to attorney's fees; and (II) defendant and Respess did not engage in cohabitation for purposes of terminating plaintiff's alimony payments to defendant.
 

 AFFIRMED.
 

 Judges GEER and TYSON concur.