An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-170

Filed 21 January 2026

Mecklenburg County, No. 22CVD019329-590

ROBERT CEASAR, Plaintiff,

v.

RUSLANA SAVYELYEVA, Defendant.

Appeal by Defendant from order entered 23 May 2024 by Judge Jena P. Culler in Mecklenburg County District Court. Heard in the Court of Appeals 27 August 2025.

*Robert Ceasar, pro se plaintiff-appellee.*

*Cavanaugh, Hamrick & McCarthy, PLLC, by Attorney Suzanne V. Cavanaugh, for defendant-appellant.*

STADING, Judge.

Ruslana Savyelyeva ("Defendant") appeals from an order for permanent custody and visitation entered 23 May 2024. On appeal, Defendant contests the trial court's decision to deny her motion for attorney's fees. After careful review of the record and applicable law, we vacate in part, and remand for further proceedings.

## I. Factual and Procedural Background

Robert Ceasar ("Plaintiff") and Defendant share one minor child, born 20 November 2022. Plaintiff and Defendant were never married and were no longer in a dating relationship when the minor child was born.

On 28 November 2022, eight days after the minor child was born, Plaintiff filed an *ex parte* motion for temporary emergency custody alleging concern for Defendant's living situation and her ex-husband's abusive history and unstable mental health condition. Plaintiff alleged that Defendant had a safe place to live following their child's birth but only stayed for four days before moving back in with her ex-husband. On 30 November 2022, the trial court denied Plaintiff's *ex parte* motion for temporary emergency custody and set a hearing for temporary custody. On 19 December 2022, Defendant filed an answer and made counterclaims for primary physical and legal custody of the minor child and attorney's fees. The trial court heard Plaintiff's motion for temporary child custody on 20 December 2022.

In an order entered 17 January 2023, the trial court granted Defendant "temporary legal custody of the minor child," granted Defendant "primary temporary physical custody," and granted Plaintiff weekend visitation but no overnight visits. On 5 April 2023, Defendant filed an affidavit of attorney's fees stating she incurred $5,581.50 in fees as of 8 March 2023. On 26 April 2023, the trial court entered an order awarding Defendant $3,000.00 in attorney's fees related to defending against Plaintiff's emergency custody motion and reserved Defendant's "claim for attorney

fees as related to her custody claim for any work performed on or after April 6, 2023." The trial court ordered Plaintiff to pay $100.00 per month to Defendant until the $3,000.00 was paid in full.

On 5 May 2024, Defendant filed an additional affidavit for attorney's fees in the amount of $19,202.50. Billing history attached to the affidavit shows charges for legal services dated 20 March 2023 to 17 May 2024. On 20 May 2024, the trial court conducted a hearing on permanent child custody and attorney's fees. Plaintiff appeared pro se*,* and Defendant was represented by counsel.

During cross-examination, the trial court inquired into Defendant's willingness to settle custody matters outside of court stating, "whether or not she's willing to settle goes to attorney's fees, quite frankly." Neither party testified to the specific details of any prior settlement negotiations. However, Defendant was asked to read a text message sent to Plaintiff in which she wrote, "I never know what you're talking about. We are not settling out of court and are going by the court order for now. Just trying to do what is best for [the minor child]."

At trial, Defendant testified that, in her opinion, the minor child should not have overnight visits with Plaintiff until the child is no longer breastfeeding. At the time of the hearing, the minor child was eighteen months old. When asked what age she thought overnight visits with Plaintiff would be appropriate, Defendant stated, "I believe it would be in the best interest of [the minor child] to start overnights . . .

when he stop[s] breastfeeding . . . [m]aybe – I don't know, two and a half, 3 years old, at least."

On 23 May 2024, the trial court entered a permanent child custody order which granted Defendant permanent primary custody and ordered a gradual increase in visitation working up to overnight visits for Plaintiff. The trial court denied Defendant's claim for attorney's fees in full based on its finding that Defendant was not acting in good faith with her position on overnight visits. Defendant timely filed notice of appeal.

## II.    Jurisdiction

This Court has jurisdiction to consider Plaintiff's appeal under N.C. Gen. Stat. § 7A-27(b)(2) (2023) ("From any final judgment of a district court in a civil action.").

## III.    Analysis

Defendant asserts the trial court erroneously denied her claim for attorney's fees pursuant to N.C. Gen. Stat. § 50-13.6 (2023). Defendant contends: Finding of Fact No. 25 in the permanent custody order is erroneous because Defendant acted in good faith; there was sufficient evidence presented for the trial court to award her attorney's fees; and the trial court did not make adequate findings to support its decision to deny attorney's fees. Defendant maintains, consistent with *Conklin v. Conklin*, she satisfied the good faith element of section 50-13.6 "by demonstrating that . . . she [sought] custody in a genuine dispute with the other party." 264 N.C. App. 142, 145, 825 S.E.2d 678, 680 (2019). We agree with Defendant's first

contention. The trial court erred as a matter of law by finding that Defendant was not acting in good faith in defending Plaintiff's child custody action. We therefore vacate the trial court's order insofar as it found Defendant was acting in bad faith and remand for further proceedings in accordance with this opinion.[1]

"The recovery of attorney's fees is a right created by statute." *Burr v. Burr*, 153 N.C. App. 504, 506, 570 S.E.2d 222, 234 (2002). To that end, "in an action or proceeding for the custody . . . of a minor child . . . the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit." N.C. Gen. Stat. § 50-13.6 (citation modified); *Brown v. Miller*, No. COA24-1045, 2025 N.C. App. LEXIS 538707, at *19–20 (2025). If a trial court awards attorney's fees pursuant to section 50-13.6, it must make two specific findings of fact: "that the party to whom attorney's fees were awarded was (1) acting in good faith and (2) has insufficient means to defray the expense of the suit." *Burr*, 153 N.C. App. at 506, 570 S.E.2d at 224. Similarly, "where an award of attorney's fees is prayed for, but denied, the trial court must

---

[1] We do not consider Defendant's second or third arguments since her first argument is dispositive of the instant appeal. Furthermore, we cannot yet answer the question of whether Defendant is entitled to an award of attorney's fees on appellate review—notwithstanding having determined that she acted in good faith—since the trial did not render a finding concerning whether Defendant possessed insufficient means to defray the expense of the suit. *See State v. Jordan*, 385 N.C. 753, 757, 898 S.E.2d 279, 282 (2024) (quoting *Pharr v. Atlanta & Charlotte Air Line Ry. Co.*, 132 N.C. 418, 423, 44 S.E. 37 (1903)) (noting that "appellate courts 'cannot find facts'"). A court of law may only award section 50-13.6 attorney's fees in its discretion when *both* statutory findings are satisfied. *Burr v. Burr*, 153 N.C. App. 504, 506, 570 S.E.2d 222, 224 (2002). Therefore, we vacate and remand for the trial court to determine whether Defendant satisfied the second criteria under N.C. Gen. Stat. § 50-13.6. Upon answering this question, the trial court, in its discretion, may grant or deny Defendant's request for attorney's fees. *See Savani v. Savani*, 102 N.C. App. 496, 505, 403 S.E.2d 900, 905–06 (1991).

provide adequate findings of fact for this Court to review its decision." *Diehl v. Diehl*, 177 N.C. App. 642, 653, 630 S.E.2d 25, 32 (2006) (cleaned up). Relevant here, this Court has previously determined that the trial court is "in the best position to evaluate the merits and sincerity of the claims of both parties and to determine whether [the party seeking attorney's fees under section 50-13.6] was acting in good faith." *Conklin*, 264 N.C. App. at 149, 825 S.E.2d at 682 (citation modified).

"Whether these statutory requirements have been met is a question of law, reviewable on appeal." *Hudson v. Hudson*, 299 N.C. 465, 472, 263 S.E.2d 719, 724 (1980). "We review questions of law *de novo*." *Brawley v. Sherrill*, 267 N.C. App. 131, 133, 833 S.E.2d 36, 38 (2019). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Lynn v. Fannie Mae*, 235 N.C. App. 77, 81, 760 S.E.2d 372, 375 (2014) (citation omitted). "Once the statutory requirements of Section 50-13.6 have been met, whether to award attorney's fees and in what amounts is within the sound discretion of the trial judge and is only reviewable based on an abuse of discretion." *Savani v. Savani*, 102 N.C. App. 496, 505, 403 S.E.2d 900, 905–06 (1991) (citation modified). "An abuse of discretion is shown only when the court's decision is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Ward v. Halprin*, 274 N.C. App. 494, 496, 853 S.E.2d 7, 9 (2020) (citation omitted). "In addition, the trial court's findings of fact must be supported by competent evidence." *Conklin*, 264 N.C. App. at 144, 825 S.E.2d at 680. "Competent evidence

is evidence that a reasonable mind might accept as adequate to support the finding." *Forehand v. Forehand*, 238 N.C. App. 270, 273, 767 S.E.2d 125, 128 (2014) (citation omitted).

Here, the trial court denied Defendant's request for attorney's fees under section 50-13.6 since it found that she was not acting in good faith. Finding of Fact No. 25 provides:

> 25. [Defendant] has an attorney's fee claim. The court does not find [Defendant's] position that [Plaintiff] should not have any overnight visits until the child is 2 and a half to 3 years old reasonable. The court does not believe that is a position that exhibits that [Defendant] is acting in good faith. The court in its discretion, denies [Defendant's] claim for attorney's fees.

The trial court therefore concluded that Defendant was not entitled to section 50-13.6 attorney's fees since she failed to satisfy the first statutory requirement.[2] Defendant maintains this finding is erroneous as a matter of law because she sought child custody in a genuine dispute with Plaintiff. *See Conklin*, 264 N.C. App. at 145, 825 S.E.2d at 680 (quoting *Setzler v. Setzler*, 244 N.C. App. 465, 467, 781 S.E.2d 64, 66 (2015)) ("Because the element of good faith is seldom in issue a party satisfies it by demonstrating that he or she seeks custody in a genuine dispute with the other party.").

In *Conklin*, this Court was tasked with determining whether the trial court

---

[2] The trial court did not render any findings as to whether Defendant possessed insufficient means to defray the cost of the lawsuit—the second statutory criteria.

erroneously awarded attorney's fees to the mother under section 50-13.6. *Id.* at 144, 825 S.E.2d at 680. On appeal, the father maintained, inter alia, the trial court erred by finding that the mother had acted in good faith. *Id.* The father maintained "that because the parties ultimately agreed to an equal custody arrangement in a consent order, that [the] [m]other did not act in good faith by defending against [the] [f]ather's custody claim and pursuing her own custody claim." *Id.* at 145, 825 S.E.2d at 681. Our Court noted the following general principles pertaining to a finding of good faith in analyzing the issue:

> While there is not a legal definition of good faith in this context, our Supreme Court has previously adopted the definition of good faith as "honesty of intention, and freedom from knowledge of circumstances which ought to put one upon inquiry" for Rule 11 sanctions. *Bryson v. Sullivan*, 330 N.C. 644, 662, 412 S.E.2d 327, 336 (1992) (brackets omitted). "Because the element of good faith is seldom in issue a party satisfies it by demonstrating that he or she seeks custody in a genuine dispute with the other party." *Setzler v. Setzler*, 244 N.C. App. 465, 467, 781 S.E.2d 64, 66 (2015) (citation, quotation marks, and ellipsis omitted).

*Id.* at 145, 825 S.E.2d at 680.

The Court ultimately held, "the trial court did not err in determining that Mother acted in good faith in defending against Father's claims regarding child custody and child support and pursuing her own counterclaims." *Id.* at 143, 825 S.E.2d at 679. The Court also held the trial court did not err by finding that the mother "had insufficient means to defray the expense of this suit and was entitled to

an award of attorney's fees." *Id.* The Court therefore ultimately concluded that the trial court did not abuse its discretion by awarding the mother attorney's fees in the amount that it did. *Id.* at 151, 825 S.E.2d at 684. With respect to good faith, the Court reasoned that the trial court correctly answered this statutory question in the affirmative since the mother maintained a genuine dispute over custody of the children with the father. *Id.* at 145, 825 S.E.2d at 680–81. As the Court observed, the "father wanted joint legal and physical custody, with the children spending equal time with each parent, while [the m]other wanted to maintain their previous custody arrangement of weekend and holiday visitation to provide more stability for the children." *Id.* (citation modified).

As to the father's argument, the Court reasoned:

> Father's logic that the existence of a genuine disagreement is determined solely by the outcome is seriously flawed and not supported by the law. *See id.* at 468, 781 S.E.2d at 66 ("[I]t is undisputed that defendant was in a genuine dispute with plaintiff—plaintiff initiated a claim for custody and defendant brought a counterclaim for custody."). Were we to adopt Father's argument, parties would have a strong disincentive to settle a custody or child support case, since the party who ultimately agrees to a resolution more similar to the one sought by the other party would risk liability for attorney's fees for not acting in good faith. Instead, they would opt to pursue the litigation to its bitter end even if they may be otherwise willing to settle. This is exactly the opposite result encouraged by our statutes and case law.

*Id.* at 147–48, 825 S.E.2d at 682.

Applying the principles of *Conklin* to the instant case, our de novo review leads

us to hold that the trial court erred as a matter of law by finding that Defendant was not acting in good faith. That is, the record reflects that Defendant sought "custody in a genuine dispute with" Plaintiff. *Id.* at 145, 825 S.E.2d at 680 (quoting *Setzler*, 244 N.C. App. at 467, 781 S.E.2d at 66). Indeed, Defendant counterclaimed for child custody, alleging among other things, Plaintiff had: not spent extended periods of time with the minor child; not participated in caregiving duties; struggled with mental health and anger issues; filed the custody action as a retaliatory measure in response to Defendant residing with her ex-husband; struggled with post-traumatic stress disorder; struggled with alcohol use; and sent Defendant harassing and threatening text messages. *See, e.g., Setzler*, 244 N.C. App. at 468, 781 S.E.2d at 66.

At trial, Defendant admitted exhibits of text message communications between her and Plaintiff evidencing the friction concerning custody of the minor child. Plaintiff testified that he struggled with post-traumatic stress disorder and "depressed mood." Additionally, Defendant testified she sought greater child custody in light of concerns with Plaintiff's behavior:

> Q. Okay. How often does Mr. Ceasar reschedule or cancel visits with [the minor child]?
>
> A. It's been pretty frequently lately. After like he turn[ed] 1 year old. Every other Saturday.
>
> Q. Okay. And can you describe for the Court how [the minor child] appears or acts when he comes home from a visit with Mr. Ceasar?
>
> A. Yes. He -- well, [the minor child] would come home with

a full diaper, thirsty, and he is acting like he is hungry. And at times, when I was picking him up, he was exhausted like . . . I felt like he wouldn't have any rest like sleep or a nap. And he's -- a lot of times when Mr. Ceasar would bring him back, the bottle of water that I'm giving for [the minor child] to drink, it's -- looks like it's untouched.

Q. What concerns do you have, if any, with Mr. Ceasar's ability to care for [the minor child]?

A. Well, first of course, his mental unstability [sic]. I know he seems very irrational. He seems like he is repeating himself all the time. If I'm telling him that [the minor child] is okay, he is asking me to take him to the doctor. I'm worried about his -- the thoughts of suicidal thoughts that he might lose his temper. He is – I've seen him losing his temper a lot throughout our dating with his daughter, which give me a lot of red flags for us to break up. And that's why I'm worried that [the minor child] is going to be -- especially when he cannot talk right now, he is child. He wouldn't be able to speak up for himself. And I don't think . . . Mr. Ceasar . . . can provide that good [of] care for [an] 18 months old.

Q. When you say you've seen him lose his temper on his daughter, what -- what did you see?

A. He would start yelling at her. She would be terrified. A few times that I've seen -- witness that he would get physical like spanking her. It was in the beginning when we were dating. And that was -- and I was trying to talk to him about it. That's . . . not good parenting techniques I would say. And I told him when we was breaking up first time, this is . . . not good for me to raise my child like that. At that time, it was [my daughter]. It wasn't good example for my [daughter] to see that. And my . . . daughter was terrified a few times when he was losing his temper and screaming in front of my daughter as well.

The trial court's finding of a lack of good faith is premised upon Defendant's request that the minor child not have overnight visits with Plaintiff until the child is

no longer breastfeeding. The trial court commented on Defendant's breastfeeding schedule in relation to the minor child's age as well as the custodial schedule:

> Overall, I do not think it is a reasonable request at all to suggest that dad should not have any overnight visits until this child is two and a half to three years old. That's just not reasonable. This child is 18 months old and breastfeeding is not going to dictate this child's schedule with dad at this point in time. Now, I realize that physiologically, there needs to be a – period of gradual weaning in order to transition to where the child is not breastfeeding as a means to say dad can't have time.

> If she wants to continue to provide breastmilk, she can certainly pump and provide breastmilk as long as she wants to. But the physical contact with her at 18 months old, is not more important in the Court's eyes than this child being able to have extended time with dad. Not at 18 months old. At one month old, when y'all first came, that was a different ballgame. Okay? But now, this child is 18 months old.

Even though it was reasonable for the trial court to deny Defendant's request to limit overnight visits until the child is done breastfeeding, Defendant's request did not transform her defense into an act of bad faith. Good faith, in the context of section 50-13.6 attorney's fees, is satisfied where the parties are engaged in a genuine dispute over the custody of a minor child. *See Conklin*, 264 N.C. App. at 142, 825 S.E.2d at 680. As illustrated above, Defendant maintained this action with Plaintiff as a result of a genuine dispute over the best interests of the minor child.

Moreover, the transcript reveals the trial court believed that "whether or not [Defendant] was willing to settle goes to attorney's fees[.]" However, *Conklin* holds

that a refusal to settle a child custody dispute *has no bearing* on a section 50-13.6 attorney's fees determination. *Id.* at 147–48, 825 S.E.2d at 682 ("Were we to adopt Father's argument, parties would have a strong disincentive to settle a custody or child support case, since the party who ultimately agrees to a resolution more similar to the one sought by the other party would risk liability for attorney's fees for not acting in good faith."). Accordingly, we are bound to hold the trial court committed error by finding that Defendant did not act in good faith when defending against Plaintiff's child custody action and by filing a counterclaim for child custody. *See, e.g., Setzler*, 244 N.C. App. at 468, 781 S.E.2d at 66. The record contains competent evidence showcasing that Defendant maintained a genuine dispute over child custody with Plaintiff. *Forehand*, 238 N.C. App. at 273, 767 S.E.2d at 128. We therefore vacate the trial court's order in part, and remand for further proceedings consistent with this opinion.

On remand, the trial court is tasked with determining whether Defendant possesses insufficient means to defray the expense of the suit as a matter of law. *See* N.C. Gen. Stat. § 50-13.6; *see also Burr*, 153 N.C. App. at 506, 570 S.E.2d at 224; *see also State v. Jordan*, 385 N.C. 753, 757, 898 S.E.2d 279, 282 (2024) (quoting *Pharr v. Atlanta & Charlotte Air Line Ry. Co.*, 132 N.C. 418, 423, 44 S.E. 37 (1903)) (noting that "appellate courts 'cannot find facts'"). Upon answering this question, the trial court, in its discretion, may then award or deny Defendant's attorney's fees request. *See Savani*, 102 N.C. App. at 505, 403 S.E.2d at 905–06 (citation modified) (noting

that "once the statutory requirements of Section 50-13.6 have been met, whether to award attorney's fees and in what amounts is within the sound discretion of the trial judge and is only reviewable based on an abuse of discretion.").

## IV.    Conclusion

For the above reasons, we vacate the trial court's order in part, and remand for further proceedings consistent with this opinion.

VACATED IN PART, AND REMANDED.

Judges ZACHARY and WOOD concur.

Report per Rule 30(e).